**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **CODY DAVIS, 923389,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:08-cv-1509-O** |
| | § | |
| **RICK THALER, Director TDCJ-CID,** | § | |
| | § | |
| **Respondent.** | § | |
| | § | |
| | § | |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Findings, Conclusions, and Recommendation ("FCR") of the United States Magistrate Judge (ECF No. 60) and Petitioner's Objections thereto (ECF No. 62) filed in accordance with 28 U.S.C. § 636(b)(1). After reviewing all matters of record in this case *de novo*, the Court finds that the Findings and Conclusions of the Magistrate Judge are correct and **ACCEPTS** them as the Findings and Conclusions of the Court.

Petitioner Cody Davis ("Petitioner") filed his original petition for writ of habeas corpus in this Court on August 27, 2008, asserting 232 grounds for relief. *See* Pet. Writ Habeas Corpus, ECF No. 1. The petition was automatically referred to the Magistrate Judge. On the Magistrate Judge's order, Petitioner filed an amended petition for writ of habeas corpus on April 3, 2009. *See* Pet'r's Am. Br. 12-43, ECF No. 48. Petitioner's amended petition alleges that he received ineffective assistance of counsel at trial and that his conviction was obtained in violation of *Brady v. Maryland*. *See id.* The Magistrate Judge recommends denying Petitioner relief on all grounds. *See* FCR 42, ECF No. 60. Petitioner raises numerous objections to the Magistrate Judge's findings. *See*

*generally* Pet'r's Objections, ECF No. 62.

## I. PROCEDURAL BACKGROUND

On May 25, 2000, a Texas state jury convicted Petitioner of the capital murder of his five-year-old daughter Allison.  *See* FCR 1.  The State did not seek the death penalty, so Petitioner received a statutorily mandated life sentence.  *See id.*  Petitioner's direct appeal of his conviction and sentence were unsuccessful.  *See id.* at 1-2.  Petitioner applied for post-conviction habeas relief in Texas state court, asserting a total of 232 grounds for relief.  *See id.* at 2.  After remanding for a paper hearing on five grounds, the Texas Court of Criminal Appeals refused Petitioner relief on August 20, 2008.  *See id.*  Petitioner filed his original petition for writ of habeas corpus with this Court on August 27, 2008, again asserting 232 grounds for relief.  *See* Pet. Writ Habeas Corpus.

## II. FACTUAL BACKGROUND[1]

Many of the relevant facts in this case were summarized by the Texas Court of Appeals in its direct review of Petitioner's case.  Because the state court's statement of facts is quoted at length in the Magistrate Judge's factual recitation, which the Court accepts and adopts, it need not be reprinted here.  *See* FCR 3-4.  However, the Court finds it helpful to outline the facts as alleged by Petitioner in his trial testimony.

At trial, Petitioner testified that he was home alone with his daughter Allison on August  26, 1999.  6 Rep. R. 114-15.  At around 3:00 p.m., Petitioner testified that he began fussing with Allison because she lied about defecating in her pants and attempting to hide the pants in her closet.  *Id.* at 117-18.  Petitioner stated that he questioned Allison about the incident but stopped because he

---

[1]  The Court accepts and adopts the factual recitation as contained in the Magistrate Judge's FCR.  *See* FCR 3-7.

determined there was "no reason to keep on asking her questions if [he] couldn't get the answers [he] was looking for." *Id.* at 121.  Petitioner testified that he instructed Allison to take a shower, which she did.  *Id.*

Petitioner stated that "getting the . . . answer [he] wanted out of [Allison] was not going to be easy," so Petitioner  "went and got a plastic tube" that he had used to discipline Allison once before. *Id.* at 123.  Petitioner testified that the tube was eighteen inches long, hollow, and was about as big around as a penny. *Id.* at 124-25.  Petitioner explained that he walked into the bathroom where Allison was showering, holding the plastic tube behind his back. *Id.* at 123.  When Allison stepped out of the shower, Petitioner stated that he continued to question Allison. *Id.* at 123. Petitioner testified that when he "did not get the response that [he] wanted," he instructed Allison to turn around and bend over. *Id.* at 124.  Petitioner stated that he began spanking Allison on the rear, and when Allison resisted he "grabbed her arm  . . . or her shoulder and turned her around." *Id.* at 127.  Petitioner testified that Allison continued to resist his paddling, so Petitioner "just started popping her . . . as she turned around, on the thigh, on her legs." *Id.*

Explaining his actions to the jury, Petitioner testified that he was attempting to "physically show" Allison that it was better to submit to Petitioner's discipline than to fight it. *Id.* at 129. Petitioner also explained that Allison knew if she fought during punishment, "the punishment gets worse." *Id.* at 127.

Petitioner testified that he stopped disciplining Allison with the plastic tube because he "thought she had enough . . . more than enough to get [his] point across to her." *Id.* at 130. Petitioner testified that Allison still was not listening to his questions, however, so Petitioner "took [his] hand and popped her in the back" twice. *Id.* at 130-31.  Petitioner stated that he popped the

center of Allison's back with the back of his hand.  *Id.*  Petitioner testified that during this time, he was not angry and had not lost his cool.  *Id.* at 130.

Petitioner next testified that he told Allison to get dressed.  *Id.* at 132.  Petitioner stated that he and Allison spent the next several hours playing video games on the floor.  *Id.* at 133.  According to Petitioner, Allison got up at around 10:20 p.m. to get Kool-Aid from the kitchen.  *Id.* at 135. Petitioner testified that when Allison had been gone around ten minutes, he went to check on her and found Allison with her head lying in Kool-Aid spilled on the kitchen counter.  *Id.*  Petitioner stated that he asked Allison what she was doing and, when she did not respond, he again "popped her in the back, with the back of [his] hand."  *Id.* at 137.  Petitioner testified that Allison "jerked around," so his hand landed on Allison's side.  *Id.*  Petitioner stated that he told Allison to take another shower, and he 'scooted' or 'patted' her in the butt with his foot as she headed to the bathroom.  *Id.* at 138-39.  Petitioner stated that he fussed sarcastically with Allison about "how much money" he would have to pay for all the water Allison was using.  *Id.*

Petitioner testified that after Allison went into the shower, he heard a "clattering sound, like stuff falling."  *Id.* at 141.  Petitioner stated that he "figured [Allison] was in there doing something she wasn't supposed to," and he wanted to "catch her in the act," so Petitioner snuck into the bathroom as quietly as he could.  *Id.* at 142.  After pulling the curtain back, Petitioner testified that he asked Allison what happened, and she responded by holding her head and pointing to the faucet. *Id.* at 142-43.  Petitioner testified to finding a small cut on Allison's head.  *Id.*  Petitioner stated that Allison never said anything to him during this time.  *Id.*

Petitioner testified that he turned off the shower, instructed Allison to dress, and began watching television with Allison in bed.  *Id.* at 144-45.  Petitioner stated he did not sense anything

4

wrong until Allison had a seizure, when Allison's eyes crossed and her jaw went rigid. *Id.* Petitioner testified that he immediately checked Allison for a pulse, began resuscitation efforts, and called for emergency assistance. *Id.* at 145. Petitioner stated that he continued CPR until police arrived on the scene, but that police stopped Petitioner from performing further CPR. *Id.* at 146-47. Petitioner testified that nobody performed CPR on Allison between the time that police arrived and Emergency Medical Technicians ("EMTs") came on the scene. *Id.* at 148-49.

When questioned about the written statements that he provided to police, Petitioner denied reading the statements before signing them and claimed that the statements did not reflect what he told police. *See id.* at 153-75. Allison died and Petitioner testified that he did not intend to kill her, was not aware that his conduct might cause a risk of injury or death, and did not hit Allison with such force that would have caused her heart to tear. *Id.* at 175-76.

## III.  LEGAL STANDARDS

Because Petitioner has objected to the Magistrate Judge's FCR, the Court reviews Petitioner's claims *de novo*, using the standards set forth below. *See Nettles v. Wainwright*, 677 F.2d 404, 409 (5th Cir. Unit B 1982), *rev'd on other grounds*, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

### A.  Habeas Petitions

 The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, applies to all federal habeas corpus petitions filed after April 24, 1996 and governs Petitioner's application in this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Section § 2254(d) of the AEDPA limits the availability of federal habeas relief for claims that have been adjudicated on the merits in state court. *See* § 2254(d). Under Fifth Circuit precedent, as well as Texas case law, a

summary denial of a writ of habeas corpus by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *see also Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) ("Where a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (rejecting petitioner's argument that state court's one-sentence denial of habeas relief was not adjudication on the merits).

When § 2254(d) applies, a federal habeas petition may not be granted unless the petitioner demonstrates that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of this section, a decision is contrary to established federal law "if the state court arrives at a conclusion opposite that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA further provides that factual determinations by a state court are entitled to deference. *See* 28 U.S.C. § 2254(e)(1). Specifically, the state court's factual findings are to be presumed correct, while the petitioner has the burden of rebutting this presumption of correctness

by clear and convincing evidence.  *Id.*  The presumption of correctness applies to explicit factual findings and implicit factual determinations "which are necessary to the state court's conclusions of mixed law and fact."  *Valdez v. Cockrell*, 274 F.3d. 941, 948 n.11 (5th Cir. 2001).

Under the AEDPA, a federal habeas petitioner may present new evidence under certain circumstances.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011).  However, the Supreme Court has made clear that when a claim has been adjudicated on the merits in state court, so as to trigger the limitations of § 2254(d), it is error for the federal habeas court to grant an evidentiary hearing or to otherwise consider new evidence with respect to that claim.  *See id.* at 1399.  As such, in reviewing a claim under § 2254(d), the federal habeas court is limited to reviewing the state court record.  *See id.*

B.  Ineffective Assistance of Counsel

"An ineffective assistance of counsel claim is evaluated under the standard announced in *Strickland v. Washington*."  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).  "A convicted defendant's claim that counsel's assistance was so defective as to require reversal . . . has two components."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "First, the defendant must show that counsel's performance was deficient."  *Id.*  In order to show deficiency, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.*  To show prejudice, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  "Both prongs must be shown by a preponderance of the evidence."  *Crane*, 178 F.3d at 312.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. In evaluating counsel's performance, the court "must make every effort to 'eliminate the distorting effects of hindsight.'" *Crane*, 178 F.3d at 312 (quoting *Strickland*, 466 U.S. at 689). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364-65 (1981)). "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. To prove prejudice, petitioner "must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "However, the mere possibility of a different outcome is not sufficient to prevail . . . . Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* at 612-13 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).

C. *Brady v. Maryland*

Under *Brady v. Maryland*, "'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The three essential components of a *Brady* claim are: "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999)). "[T]he standard for prejudice under *Strickland* is identical to the standard for materiality under *Brady*." *Felder v. Johnson*, 180 F.3d 206, 214 (5th Cir. 1999).

## IV. ISSUES

In his amended writ of habeas corpus, Petitioner alleges that he received ineffective assistance of counsel based on the following acts of trial counsel:

1) Eliciting false testimony favorable to the state;
2) Failing to object to the prosecutor's closing argument and voir dire;
3) Presenting closing argument that undermined Petitioner's credibility and defense theory;
4) Presenting deficient closing argument;
5) Abdicating the role of defense counsel by arguing for Petitioner's conviction of a lesser-included offense;
6) Failing to investigate, secure, and introduce the recording of the East Texas Medical Services 9-1-1 call.

FCR 2; *see* Pet'r's Am. Br. 2-42. Petitioner also alleges that the prosecution failed to disclose a complete copy of the ETMS 9-1-1 tape in violation of *Brady v. Maryland*. Pet'r's Am. Br. 43. The Magistrate Judge found that Petitioner failed to prove either ineffective assistance of counsel or a *Brady* violation. *See generally* FCR. Accordingly, the Magistrate Judge recommended denying the

petition for writ of habeas corpus.  FCR 42.  In his objections to the FCR, Petitioner generally reasserts the same arguments made to the Magistrate Judge in his amended petition for writ of habeas corpus.  *See* Pet'r's Objections 1.  Petitioner also objects to the Magistrate Judge's recommendation on numerous specific grounds, as discussed below.[2]  *See id.*

## V.  GENERAL OBJECTIONS

### A. Limiting Petitioner's Presentation of Claims to Fifty Pages

Petitioner objects that the Magistrate Judge should not have restricted Petitioner's presentation of claims to those that would fit in fifty pages.  *See* Pet'r's Objections 3.  Petitioner's original petition for writ of habeas corpus before this Court spanned at least 229 pages and asserted 232 grounds for relief.  *See* Pet. Writ Habeas Corpus, ECF No. 1.  The Magistrate Judge ordered that, in the interests of justice, Petitioner be required to submit an amended petition to be drafted with the assistance of counsel.  *See* Order, Nov. 20, 2008, ECF No. 15.  Pursuant to the Magistrate Judge's order, Petitioner's amended petition would supersede his original petition and would be subject to local rules that limit briefing to twenty-five pages.  *See id.*; *see also* L.R. 7.2(c).

After Petitioner was appointed counsel, Petitioner submitted a thirty-nine page amended petition.  *See* Pet'r's Am. Appl., ECF No. 22.  Thereafter, Petitioner filed pro se motions to unfile his amended petition and to file supplemental grounds for relief, both of which were denied by the Magistrate Judge on the ground that any motions from Petitioner should have been filed by his appointed counsel.  *See* Order, June 9, 2009, ECF No. 28.  Petitioner next moved to remove his

---

[2] Because Petitioner has filed objections to the Magistrate Judge's FCR, the Court reviews Petitioner's claims *de novo.  See Nettles v. Wainwright*, 677 F.2d 404, 409 (5th Cir. Unit B 1982), *rev'd on other grounds*, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).  However, the Court need not consider those claims by Petitioner that are merely frivolous, conclusive, or general.  *See id.* at 410 n.8.

appointed counsel and to proceed pro se, which the Magistrate Judge granted.  *See* Order, Sept. 1, 2009, ECF No. 34.  With Petitioner now acting pro se, the Magistrate Judge allowed Petitioner to file a second amended petition not to exceed fifty pages.  *See* Order, Mar. 22, 2010, ECF No. 44. Petitioner filed his second amended petition in compliance with the fifty-page limit set by the Magistrate Judge.  *See* Pet'r's Am. Br., ECF No. 48.

After filing his second amended petition, Petitioner moved to expand the record before the Magistrate Judge to include the appendices and documents attached to Petitioner's original federal petition for writ of habeas corpus.  *See* Mot. Expand R., ECF No. 56.  The Magistrate Judge granted this motion to the extent that Petitioner sought to have the Magistrate Judge consider documents previously submitted by Petitioner.  *See* Order, Oct. 21, 2010, ECF No. 57.

The Rules Governing Section 2254 Cases ("§ 2254 Rules") appear in Title 28 U.S.C., immediately following § 2254.  The § 2254 Rules do not address the authority of a federal habeas court to limit the length of briefs submitted by a habeas petitioner.  *See* § 2254 Rules.  However, Rule 12 of the § 2254 Rules states that the Federal Rules of Civil Procedure apply to habeas cases when not inconsistent with the § 2254 Rules.  *See id.*  For its part, Rule 81 of the Federal Rules of Civil Procedure allows local rules to dictate matters not addressed by the federal rules, such as limits on briefing.  *See* Fed. R. Civ. P. 83(a)(1).  The Local Rules for the Northern District of Texas state that a party's brief in support of a motion is not to exceed twenty-five pages and that leave to file a brief in excess of twenty-five pages will be granted only for extraordinary and compelling reasons. L.R. 7.2(c).

In this case, the Petitioner's writ of habeas corpus was subject to the local rule limiting briefs to twenty-five pages.  The Magistrate Judge excused Petitioner from the rule to the extent that

11

Petitioner was allowed to file an amended brief not to exceed fifty pages. Furthermore, the Magistrate Judge did not limit Petitioner's ability to present documentary evidence in support of his claims, as the Magistrate Judge expanded the record to include all documents that Petitioner filed with this Court. Petitioner's objection that the Magistrate Judge limited presentation of his claims to fifty pages is without merit.

> B. Refusal to Hold Evidentiary Hearing, Allow for Discovery, or Appoint a Medical Expert

Petitioner objects that the Magistrate Judge refused to hold an evidentiary hearing to determine the credibility of the parties' arguments and claims, to resolve factual disputes between the parties, and to seek trial counsel's explanations for his actions in representing Petitioner. *See* Pet'r's Objections 3-4. Petitioner also objects that the Magistrate Judge denied discovery of evidence proving that Petitioner did not make certain statements brought into evidence at trial, including that Petitioner hit Allison with his fists. *See id.* at 4. In addition, Petitioner objects that the Magistrate Judge ignored or denied his request for the appointment of a medical expert to analyze the cause of Allison's injuries. *See id.*

The Magistrate Judge properly denied Petitioner's request for an evidentiary hearing, discovery, and appointment of a medical expert. The Texas Court of Criminal Appeals denied Petitioner's state petition for writ of habeas corpus, which asserted 232 grounds for relief. *See* FCR 2. Under *Harrington*, the state court's denial of Petitioner's claims created a rebuttal presumption that those claims were adjudicated on the merits. *See* 131 S. Ct. at 784-85. Where a state court has adjudicated claims on the merits, the federal habeas court in reevaluating those claims may only consider the record as it existed before the state habeas court. *See Cullen*, 131 S. Ct. at 1399; *see also supra* Part III.A. In effect, this means that the federal habeas court cannot consider new

evidence or hold an evidentiary hearing when deciding claims adjudicated on the merits in state court.[3]   *See Cullen*, 131 S. Ct. at 1399.   As such, unless Petitioner in this case can rebut the presumption of an adjudication on the merits, the Court is precluded from considering evidence that was not before the state habeas court when it originally denied Petitioner's claims.   *See id.*

Petitioner argues that an evidentiary hearing is necessary because the state court issued only a summary decision, without explanation, and thus failed to develop the record fully.   *See* Pet'r's Objections at 8.   However, the Supreme Court has expressly held that the presumption of an adjudication on the merits is not rebutted merely because a state court's denial of relief is summary. *See Harrington*, 131 S. Ct. 784-85 (involving a one sentence denial).   Petitioner has therefore failed to rebut the presumption that the state court adjudicated Petitioner's 232 claims on the merits.

For these reasons, the Court finds that Magistrate Judge properly denied Petitioner's requests for an evidentiary hearing, discovery, and appointment of a medical expert.   Accordingly, Petitioner's objections on this issue are without merit.   The Court **DENIES** Petitioner's renewed requests for an evidentiary hearing, discovery, and appointment of a medical expert.

C.   Relying on the Statement of Facts by the Texas Court of Appeals

Petitioner objects that the Magistrate Judge erred in relying on the statement of facts by the Texas Court of Appeals.   *See* Pet'r's Objections 4-5.   Petitioner alleges that this statement of facts is obviously contradictory.   *See id.*

---

[3] The Rules Governing Section 2554 Cases appear in Title 28 U.S.C., immediately following § 2254. The Rules allow a federal habeas court to order discovery for good cause (Rule 6) or to hold an evidentiary hearing (Rule 8).   These Rules do not aid Petitioner.   The Committee Notes to Rule 8 state that it "is not intended to supersede the restrictions on evidentiary hearings" in 28 U.S.C. § 2254(e)(2).   Likewise, the Committee Notes to Rule 6 note that discovery would be helpful to the federal habeas court in connection with an evidentiary hearing, to which Petitioner is not entitled.   As the Court has explained, Petitioner's claims were adjudicated on the merits in state court and must be resolved on the basis of the state court record.

As discussed in Part III.A above, AEDPA § 2254(d) applies to this case.  As such, Petitioner's claims must be reviewed in light of the record as it existed before the state habeas court. *See Cullen*, 131 S. Ct. at 1399.  In this case, the record before the state habeas court included the trial record as well as the opinion of the Texas Court of Appeals.  In evaluating Petitioner's claims, the Magistrate Judge quoted the factual background as set out by the Texas Court of Appeals.  *See* FCR 3-4.  While paying proper deference to the factual findings of the state appellate court, the Magistrate Judge did not consider this factual background in isolation.  Rather, the Magistrate Judge reviewed the statement of facts in light of the entire record.  For example, the Magistrate Judged expanded on the statement of facts to note conflicting testimony about the timing of Petitioner's 9-1-1 call.  *See id.* at 3 n.2.  The Magistrate Judge went on to consider Petitioner's trial testimony, which the Magistrate Judge reconstructed from the trial record.  *See id.* at 4-7.  Elsewhere in his recommendations, the Magistrate Judge also considered other portions of the record as it existed before the state habeas court, including an affidavit filed by trial counsel.  *See id.* at 10.

As required by the AEDPA and *Cullen*, the Magistrate Judge considered the record as it existed before the state habeas court.  The Magistrate Judge, while deferring to the state court's findings of fact, did not merely accept the state court's recitation of facts as true but analyzed it in light of the entire record as it existed before the state habeas court.  Petitioner's objection that the Magistrate Judge relied on the state court's statement of facts is without merit.

D.  Evidence Not Sufficient to Prove Petitioner Committed Capital Murder

Petitioner objects that the evidence is not sufficient to prove beyond a reasonable doubt that Petitioner committed capital murder.  *See* Pet'r's Objections 5.  When reviewing a claim of insufficient evidence, a federal habeas court must determine whether "viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1005 (5th Cir. 2000) (internal quotation marks omitted).  In applying this standard, the Court must refer to the elements of the offense as defined by Texas state law.  *See id.*

Here, Petitioner was charged with capital murder of a person under six years old, which required proof that Petitioner intentionally or knowingly caused the death of a person under six years old.  *See infra* Part VIII.A; *see also* Tex. Penal Code Ann. § 19.03(a)(8).  Having reviewed the facts of this case–as discussed throughout this order and in the Magistrate Judge's recommendations–in the light most favorable to the prosecution, the Court finds that a reasonable trier of fact could have found that Petitioner knowingly or intentionally caused the death of Allison, who was five years old. Petitioner's objection on this issue is without merit.

## VI.  OBJECTIONS TO THE MAGISTRATE JUDGE'S STATEMENT OF FACTS

Petitioner objects to the Magistrate Judge's statement of facts on five grounds:

First, Petitioner objects that the Magistrate Judge noted that Petitioner's knuckles were red on the night Allison suffered her injuries.  *See* Pet'r's Objections 7.  Petitioner alleges that the Magistrate Judge improperly used this fact to infer that Petitioner hit Allison with his fists.  *See id.* Petitioner claims that trial counsel was ineffective in failing to rebut this inference with proof that Petitioner's knuckles always look red.  *See id.*

Second, Petitioner objects that the Magistrate Judge failed to mention that Allison went outside after she was spanked and ate a meal between the time she was spanked and suffered a seizure.  *See id.* at 8.

Third, Petitioner objects that the Magistrate Judge failed to note that Allison was supposed

to start school in Forney, where Petitioner resided, the day after Allison suffered her injuries.  *See id.*  Petitioner alleges that this fact is vital, given his allegation that trial counsel elicited false testimony that Allison was supposed to attend school in San Antonio.  *See id.*

Fourth, Petitioner objects that the Magistrate Judge, while noting Allison's fall in the shower, failed to mention that this is what Petitioner believed to have caused Allison's seizure and cardiac arrest.  *See id.*

In Petitioner's final objection to the statement of facts, the Petitioner again objects that the Magistrate Judge refused to hold an evidentiary hearing to develop the record for review.  *See id.*

Each of Petitioner's objections to the Magistrate Judge's statement of facts is without merit. In his first four objections, Petitioner argues that the Magistrate Judge erred in making certain factual findings or omitting certain facts from his statement of facts.  *See* Pet'r's Objections 7-8.  As stated earlier, because Petitioner has objected to the Magistrate Judge's findings, the Court reviews Petitioner's claims *de novo*.  *See supra* Part IV.  In resolving Petitioner's claims, therefore, the Court considers not only the Magistrate Judge's statement of facts but the record as a whole, including the facts alleged by Petitioner at trial and in his habeas petitions.  Accordingly, Petitioner's objections to the factual findings are overruled but will be considered by the Court to the extent that they relate to Petitioner's substantive claims.  As for Petitioner's related claim that trial counsel was ineffective for failing to show that Petitioner's knuckles are always red, the Court finds that, even assuming that Petitioner's claim is true, the state court was not unreasonable in denying Petitioner relief under *Strickland*, particularly in light of the overwhelming evidence of Petitioner's guilt.  *See Pondexter v. Quarterman*, 537 F.3d 511, 524 (5th Cir. 2008) (finding that "even under a *de novo* standard of review," petitioner suffered no prejudice where "the jury, cognizant of overwhelming evidence of

16

guilt, would have found [petitioner] guilty" notwithstanding trial counsel's allegedly deficient representation).   As to Petitioner's final objection that the Magistrate Judge failed to hold an evidentiary hearing, the Court has already resolved this objection against Petitioner.  *See supra* Part V.B.

## VII. CLAIMS OF ELICITING FALSE TESTIMONY

Petitioner's first allegation of ineffective assistance of counsel is that trial counsel repeatedly elicited false testimony favorable to the prosecution.  *See* FCR 9.  The Magistrate Judge found that Petitioner failed to establish ineffective assistance of counsel as to each claim of eliciting false testimony.  *See* FCR.  Petitioner objects to each of the Magistrate Judge's findings.  *See* Pet'r's Objections 8-22.

A.  Testimony that Petitioner Faked CPR

Petitioner alleges that trial counsel was ineffective for eliciting false testimony from Forney Police Sergeant Mike Williams that Petitioner was faking CPR on Allison when Williams arrived at the scene.  Pet'r's Am. Br. 13.  In his affidavit before the state habeas court, trial counsel stated that in asking Williams about the CPR that Petitioner performed on Allison, counsel was attempting to show that Petitioner was trying to save his Allison's life.  *See* FCR 10.  Trial counsel also stated that he believed he had sufficiently impeached Williams's claim that Petitioner was faking CPR. *See id.*  The state habeas court found that trial counsel engaged in sound cross-examination by showing that Williams's testimony was false.  *See id.*  Alternatively, the state court found that even if trial counsel's cross-examination was deficient, the testimony was not prejudicial given that other evidence unambiguously established that Petitioner had engaged in CPR and, even if the jury believed Petitioner was trying to save Allison's life, the probative value of this evidence was greatly

outweighed by evidence of Petitioner's guilt. *See id.* Given these facts, the Magistrate Judge found that the state court's denial of relief under *Strickland* was not unreasonable. *See* FCR 10, 12.

Petitioner objects to the Magistrate Judge's findings on the grounds that in asking Williams about CPR, trial counsel did not intend to confirm that Petitioner was performing CPR on Allison and did not effectively impeach Williams. *See* Pet'r's Objections 8-10. Petitioner further objects that Williams's testimony prejudiced his defense because, without it, the jury would have acquitted Petitioner on the basis that he was trying to save Allison's life. *See id.* at 9. Finally, Petitioner objects that the probative value of Petitioner performing CPR on Allison was not outweighed by evidence of Petitioner's guilt because it shows that Petitioner did not intend to kill Allison. *See id.* at 11-14.

Based on the foregoing, the Court finds the state court was not unreasonable in denying Petitioner relief under *Strickland*. The state court could reasonably have found that trial counsel employed sound trial strategy in questioning and impeaching Williams on whether Petitioner performed CPR on Allison. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim.") (internal quotation marks omitted). In addition, it would not be unreasonable for the state court to conclude that Petitioner suffered no prejudice from Williams's testimony that Petitioner faked CPR, given the weight of evidence against Petitioner. *See Pondexter v. Quarterman*, 537 F.3d 511, 524 (5th Cir. 2008) (finding that "even under a *de novo* standard of review," petitioner suffered no prejudice where "the jury, cognizant of overwhelming evidence of guilt, would have found [petitioner] guilty" notwithstanding trial counsel's allegedly deficient representation). Petitioner has made only

speculative objections to the Magistrate Judge's findings on this issue and has otherwise failed to meet his burden of proof under *Strickland* and the AEDPA.

B. Testimony of Blood in Petitioner's Home

Petitioner alleges that trial counsel was ineffective for eliciting false testimony from Sergeant Williams about blood he saw in Petitioner's home and for failing to object or impeach on this testimony.  Pet'r's Am. Br. 13-14.  Petitioner alleges that "all evidence" from the home was suppressed as the result of an illegal search and seizure, so that trial counsel was ineffective for asking Sergeant Williams about what he "saw in [the] house." *Id.* Petitioner also alleges that Williams's testimony that he saw blood in Petitioner's home was false and that trial counsel was ineffective for not objecting or impeaching on the matter.  *Id.*  Finally, Petitioner alleges this testimony was prejudicial because it painted a gory crime scene for the jury.  *Id.*

The Magistrate Judge found that Williams's testimony as to blood in the home was non-responsive to trial counsel's question about vomit in the home, and that trial counsel's failure to object was not incompetent given the need to minimize the effect of this testimony.  *See* FCR 13. In the alternative, the Magistrate Judge found that the testimony was not prejudicial, given that Williams made only an "isolated statement" of seeing blood near the bathroom, and there was no other evidence or mention of blood at trial.  *See id.* at 14.  Given these facts, the Magistrate Judge found that the state court could have reasonably denied relief under *Strickland*.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the ground that the Magistrate failed to address Petitioner's claim that trial counsel was ineffective for eliciting testimony regarding suppressed evidence.  *See* Pet'r's Objections 15.  Petitioner reasserts his argument that trial counsel was ineffective for failing to object to this evidence, which Petitioner characterizes as false and

highly prejudicial.  *See id.* at 15-16.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying

Petitioner relief under *Strickland*.  The state court could reasonably have found that trial counsel

competently questioned Williams and was reasonable in foregoing an objection that would have

brought unnecessary attention to Williams's non-responsive statement that he saw blood in

Petitioner's home.  *See Hardamon v. United States*, 319 F.3d 949, 949 (7th Cir. 2003) ("A

competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in

without drawing additional attention to it, such as an objection would.").  In addition, it would be

reasonable to conclude that no prejudice resulted to Petitioner from this testimony.  *See Pondexter*,

537 F.3d at 524.  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

C. <u>Testimony that Sergeant Williams Performed CPR</u>

Petitioner alleges that trial counsel was ineffective for eliciting false testimony from Sergeant

Williams that he performed CPR on Allison and for failing to impeach on this matter.  *See* Pet'r's

Am. Br. 14-15.  Petitioner alleges that trial counsel could have shown that Williams was the ultimate

cause of Allison's death, since Williams left Allison on the floor to die while he searched

Petitioner's home.  *Id.*  The Magistrate Judge found that the prosecution, not defense counsel, first

elicited Williams's testimony that he performed CPR.  *See* FCR 14.  Furthermore, although trial

counsel did not cross-examine Williams as to whether he performed CPR, trial counsel created a fact

issue on the matter through the testimony of two paramedics and Petitioner himself.  *See id.* at 14-

15.  The Magistrate Judge found this was a reasonable trial strategy.  The Magistrate Judge also

found no prejudice in this testimony, given that there was no evidence Williams would have changed

his testimony if impeached.  *See id.* at 15.  Furthermore, the Magistrate Judge found that Petitioner's

20

version of events was contradicted by the evidence at trial and, in any case, Petitioner did not allege that Williams caused the injuries that led to Allison's death.  *See id.*  Given the above, the Magistrate Judge found that the state court had a reasonable basis for denying relief under *Strickland*.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the ground that the Magistrate misstated his claim.  *See* Pet'r's Objections 16.  Petitioner reasserts his claim that trial counsel was ineffective for eliciting false testimony and failing to impeach.  *See id.*  Petitioner objects that the Magistrate Judge unreasonably found that trial counsel created a fact issue as to Williams's testimony and that choosing not to impeach Williams via cross-examination was reasonable trial strategy.  *See id.* at 16-17.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that trial counsel acted competently in impeaching Williams and contradicting Williams's testimony that he performed CPR on Allison.  *See Dunham*, 313 F.3d at 732.  In addition, it is not unreasonable to conclude that no prejudice resulted to Petitioner from this testimony.  *See Pondexter*, 537 F.3d at 524.  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA

### D. Testimony that Allison Had Five Broken Ribs

Petitioner alleges that trial counsel was ineffective for eliciting false testimony that Allison had five broken ribs at her death.  *See* Pet'r's Am. Br. 15.  Petitioner alleges that this testimony was prejudicial because Allison had only two broken ribs at her death, and these injuries could have been caused by her falling in the shower or by extended CPR.  *See id.*

The autopsy report indicated that Allison had new fractures on ribs 6 and 7, in addition to

older injuries on ribs 7, 10, and 11.   *See* FCR 16.   On cross-examination by defense counsel, the medical examiner repeated her direct testimony that five total ribs were "broken."   *See id.*   Trial counsel did not ask the medical examiner to clarify that only two of Allison's ribs were actually broken at her death, while the other injuries were older.   *See id.*   In his affidavit, trial counsel explained that the medical examiner's testimony was confirmed by the autopsy report and was not impeachable.   *See id.*   The Magistrate Judge found that trial counsel's questioning and failure to impeach were not unreasonable.   *See id.*   Furthermore, the Magistrate Judge found that no prejudice resulted from this testimony, given that the broken ribs were only a small portion of the injuries suffered by Allison, which together could not be explained by a fall or by CPR.   *See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that they are not supported by the record.   Pet'r's Objections 19.   Petitioner also objects that the Magistrate Judge's finding as to prejudice is unreasonable because it relies upon the testimony of the medical examiner, whom Petitioner alleges is not qualified to testify as to the cause of injuries.   *See id.* at 20.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.   The state court could have reasonably found that trial counsel acted competently in cross-examining the medical examiner about the nature of Allison's rib injuries.   *See Dunham*, 313 F.3d at 732.   In addition, it is not unreasonable to conclude that no prejudice resulted to Petitioner from this testimony.   *See Pondexter*, 537 F.3d at 524.   Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

E.   Testimony that Allison's Heart Injury Could Have Been Caused by a Fist

Petitioner alleges that trial counsel was ineffective for eliciting false testimony from the medical examiner that the heart injuries suffered by Allison could have been caused by a fist.   *See*

22

Pet'r's Am. Br. 17.  Petitioner alleges that without this testimony there would have been no factual connection between the injuries to Allison's heart and the allegation in the indictment that Petitioner hit Allison with a fist.  *See id.*

The Magistrate Judge found that evidence other than the statement complained of by Petitioner connects Allison's heart injuries to a hit from a first, namely the medical examiner's separate testimony that blunt force injuries caused the heart injuries and Petitioner's statement that he hit Allison with a fist.  *See* FCR 17-18.  The Magistrate Judge found that trial counsel could not ignore the connection between the heart injury and Petitioner hitting Allison with a fist, and that it was reasonable trial strategy to begin cross-examination by addressing the evidence he needed to challenge in order to establish Petitioner's innocence.  *See id.* at 17.   The Magistrate Judge also found that this testimony was not the only evidence connecting Petitioner to Allison's death as alleged in the indictment.  *See id.*  Rather, the indictment alleged injuries by fist and by a plastic pipe, while the medical examiner testified that Allison may have died from bruising alone and that her bruising was consistent with Petitioner's admission that he whipped Allison with a plastic pipe. *See id.* Given these facts, the Magistrate Judge found that the state court's denial of relief was not unreasonable under *Strickland*.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that no evidence other than the testimony elicited by trial counsel connected Petitioner and the fatal injuries to Allison. Pet'r's Objections 20.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that trial counsel acted competently in cross-examining the medical examiner about the nature and cause of the

injuries to Allison's heart. *See Dunham*, 313 F.3d at 732.  In addition, it is not unreasonable to conclude that no prejudice resulted to Petitioner from this testimony.  *See Pondexter*, 537 F.3d at 524.  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

F.  Testimony that Allison's Mother Intended to Take Allison Back to San Antonio

Petitioner alleges that trial counsel was ineffective for eliciting false testimony from Rhonda Cook, Allison's mother, that she called Allison the day before she died to say that Cook was picking her daughter up that weekend and taking her to San Antonio to begin school.  *See* Pet'r's Am. Br. 17.  Petitioner alleges that this testimony was false and prejudiced his defense because it provided the jury with a motive for the killing.  *See id.*

The Magistrate Judge noted that although Petitioner contradicted Cook's statement by testifying that Allison was to remain with him for the school year, Cook's testimony was not shown to be false.  *See* FCR 19.  The Magistrate Judge also found that trial counsel's cross-examination of Cook was not deficient, since trial counsel showed that Cook had no reason to fear for Allison's safety in Petitioner's care and that Allison had never expressed such fear.  *See id.*  Even assuming cross-examination was deficient, the Magistrate Judge found no prejudice in this testimony.  *See id.* at 20.  Although Petitioner alleged Cook's testimony provided the jury with a motive, the only motive Petitioner offered for disciplining his child was being angry at her for defecating in her pants, a motive which the State accepted and argued at trial.  *See id.*  Given the above, the Magistrate Judge found that the state court's denial of relief under *Strickland* was not unreasonable.  *See id.*

Petitioner reasserts his original arguments in his objections to the Magistrate Judge's findings, alleging that he has established Cook's testimony was false and that this testimony was prejudicial because it gave the jury a motive for Petitioner to kill Allison.  Pet'r's Objections 22.

24

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*. The state court could have reasonably found that the testimony elicited by trial counsel was not false and, in any case, counsel acted competently in cross-examining Cook. *See Dunham*, 313 F.3d at 732. In addition, it is not unreasonable to conclude that any motive suggested by Cook's testimony did not prejudice Petitioner's case, especially in light of the significant and undisputed evidence–including Petitioner's own testimony–that Petitioner's conduct was actually motivated by his anger at Allison for defecating in her pants. *See* FCR 19; *Pondexter*, 537 F.3d at 524. Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

## VIII. FAILURE TO OBJECT TO VOIR DIRE EXAMINATION AND JURY ARGUMENT

### A. Definition of the Culpable Mental State

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's misstatement of the law in voir dire and jury argument. *See* Pet'r's Am. Br. 18-19. Petitioner first alleges that during voir dire the prosecution improperly defined capital murder to include intentionally causing serious injury that causes the death of another person. *See id.* Petitioner next alleges that during jury argument the prosecution mischaracterized its burden of proof as to Petitioner's mental state by defining capital murder as merely causing the death of an individual. *See id.* The Magistrate Judge found that the record supports neither of these conclusions. *See* FCR 21-22.

Petitioner was indicted and convicted of capital murder for intentionally or knowingly causing the death of a person under six years old. *See id.* In voir dire, the prosecution properly questioned potential jurors about a lesser-included offense of capital murder, which requires intending to cause serious bodily injury and committing an act clearly dangerous to human life that

25

causes death.  *See id.*  In jury argument, defense counsel argued that Petitioner acted negligently and did not intend to kill his daughter.  *See id.*  Clarifying the state's burden, the prosecution responded that capital murder does not require "intent to kill," but only that a person intentionally or knowingly causes the death of a person.  *See id.*  Given these facts, the Magistrate Judge found that trial counsel was not deficient in failing to object to the prosecution's statements of the law in voir dire and jury argument, as those statements were correct.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that they are not supported by the record.  Pet'r's Objections 22-23. Petitioner alleges that the prosecution's jury argument left the jury with the impression that "simply causing the death of someone was murder and that intent . . .  is not part of the State's burden of proof."  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that trial counsel acted competently in refusing to lodge a fruitless objection to the prosecution's correct statement of the law in voir dire and jury argument.  *See Nixon v. Epps*, 405 F.3d 318, 328 (5th Cir. 2005) ("Because an objection by . . . counsel would have been fruitless, there can be no claim of deficient performance under *Strickland*.  If anything, counsel's decision not to object, and thereby highlight the prosecution's argument to the jury, was a prudent trial decision.").  Petitioner has made speculative objections to the Magistrate Judge's findings on this issue and has otherwise failed to meet his burden of proof under *Strickland* and the AEDPA.

B.  Prosecutor's Description of Injuries

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's description of Allison's injuries during jury argument.  *See* Pet'r's Am. Br. 19-20.  Specifically,

26

Petitioner alleges that trial counsel failed to object or rebut the prosecution's argument that Petitioner caused the mutilation of Allison's body as shown in the autopsy photos.  *See id.* Petitioner emphasizes the prosecution's statement that Petitioner "treated Allie like a rag doll, just went to work on her, tore her body apart!"  *See id.*

The Magistrate Judge found that the record does not support Petitioner's claim that the prosecution attributed the injuries to Allison as shown in the autopsy photos to Petitioner.  *See* FCR 22-23.  Rather, the prosecutor's statements were merely proper summation and a reasonable deduction from the evidence of the severe injuries Allison sustained from Petitioner.  *See id.*  In addition, the Magistrate Judge noted that the jury was shown pictures of Allison's body before the autopsy and was told about the autopsy process by the medical examiner.  *See id.*  As such, the jury could not have confused Allison's injuries at death with the autopsy photos.  *See id.*  Given these facts, the Magistrate Judge found that the state court was not unreasonable in its application of *Strickland.  See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that they are unreasonable given the State's true intent and actions.  Pet'r's Objections 23.  Petitioner reasserts his claim that the prosecution told the jury that Petitioner caused the injuries to Allison as seen in the autopsy photos.  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably concluded that the prosecution properly argued and described Allison's injuries in jury argument and that defense counsel was reasonable in failing to lodge a fruitless objection to these statements.  *See Nixon*, 405 F.3d at 328.  Petitioner has made only speculative objections to the Magistrate Judge's findings on

27

this issue and has otherwise failed to meet his burden of proof under *Strickland* and the AEDPA.

C. The Prosecutor's Injury Count

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's statement in jury argument that there were 300 on Allison's body and that Allison had seven broken ribs. *See* Pet'r's Am. Br. 20-23. Petitioner alleges that these injury counts were false, unsupported by the evidence, and trial counsel should have objected. *See id.* As to the prosecution's statement that Allison had 300 bruises, Petitioner acknowledges that trial counsel in his affidavit to the state habeas court stated he did not object because he did not want to draw attention to the misstatement or to the extent of Allison's injuries. *See id.* Petitioner dismisses this explanation as absurd. *See id.*

Like Petitioner, the Magistrate Judge also looked to trial counsel's affidavit to the state habeas court. *See* FCR 23-24. Trial counsel stated that objecting to the specific number of bruises on Allison's body, when bruises were clearly present, would draw unnecessary attention to Allison's injuries. *See id.* Although trial counsel did not specifically explain his failure to object to the statement that Allison had seven broken ribs, the Magistrate Judge noted that "the same rationale applies." *See id.* Given these facts, the Magistrate Judge found that trial counsel's failure to object was reasonable and even prudent under the circumstances. *See id.*

In his objections to the Magistrate Judge's findings, Petitioner reasserts his original argument that the prosecution's injury count during jury argument was false and unsupported by the record, while trial counsel's failure to object was inexcusable. *See* Pet'r's Objections 23.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying

Petitioner relief under *Strickland*.  The state court could reasonably have found that even if the prosecution's injury count in jury argument was incorrect, defense counsel acted competently in not objecting, given that an objection would only highlight the prosecution's argument that Allison suffered broken ribs and bruising.  *See Nixon*, 405 F.3d at 328.  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

 D.  Length of Time Petitioner Beat Allison

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's statement in jury argument that Petitioner admitted to beating Allison for three hours.  *See* Pet'r's Am. Br. 23-24.  Petitioner argues that he actually testified that three hours passed between the time Allison's grandmother left his home and the time he began to discipline Allison.  *See id.*  Petitioner claims that the prosecution lied when it stated that he beat Allison for three hours and that this statement severely prejudiced him, since Petitioner claims that he disciplined Allison for less than fifteen seconds.  *See id.*

The Magistrate Judge noted that the prosecution's question to Petitioner on the stand–"'how long a period of time' did Petitioner 'start' hitting Allison."–was unclear and even required Petitioner to ask for clarification.  *See* FCR 24 (quoting trial record).  The Magistrate Judge also emphasized that the prosecution's jury argument was equivocal, with the prosecutor stating "'I think he told y'all he laid into that little girl for at least three hours . . . that's what he said yesterday afternoon."  *See id.* (quoting trial record).  As such, the Magistrate Judge concluded that the prosecution was merely inviting the jury to recall the testimony for themselves and was not arguing outside the evidence.  *See id.*  Furthermore, the Magistrate Judge found that defense counsel's failure to object to this jury argument was sound strategy in this case because "an objection may have

antagonized the jury by disputing a fact that was supported by the extensive physical injuries and, in the end, was not heavily relied on or emphasized by the prosecution." *See id.* at 25.

Petitioner objects to the Magistrate Judge's findings on the grounds that the prosecution's question to Petitioner on the stand was not ambiguous and the prosecution's jury argument was not equivocal. *See* Pet'r's Objections 24. Petitioner reasserts his original argument that it was not sound trial strategy to fail to object to the prosecution's jury argument on this issue.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*. The state court could have reasonably found that the prosecution properly argued the evidence when it stated that Petitioner testified to beating Allison for three hours and that defense counsel acted competently in foregoing a fruitless objection to proper jury argument. *See Nixon*, 405 F.3d at 328. In addition, the state court could have reasonably found that trial counsel's decision not to object was reasonable in light of the risk that disputing a fact supported by the evidence–that Allison suffered a prolonged beating–would merely antagonize the jury. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992) ("[I]n light of the evidence . . . [counsel] could reasonably have decided not to risk antagonizing the jury by objecting . . . ."). Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

E. Prosecutor's Demonstration

Petitioner alleges that trial counsel was ineffective for failing to object during jury argument to the prosecutor's demonstration of the force with which Petitioner beat Allison. *See* Pet'r's Am. Br. 24-25. Petitioner alleges that this demonstration, which involved the prosecutor violently "striking the ground with an object," was not supported by the evidence because Petitioner did not testify that he used much force in disciplining Allison and no physics expert had testified as to the

30

force that was used.  *See id.*  Petitioner alleges that trial counsel's failure to object to this demonstration deprived him of a fair trial based on the evidence.  *See id.*

The Magistrate Judge found that the prosecution in its jury argument was making a fair comment on Petitioner's own demonstration of the force he used on Allison, which involved Petitioner tapping a plastic spoon.  *See* FCR 25-26.  As such, the Magistrate Judge found that the prosecution's demonstration was not objectionable and that defense counsel was not ineffective for failing to object.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that they are not supported by reasoning.  *See* Pet'r's Objections, 24-25.  Petitioner reasserts his original argument that the prosecution's demonstration as to Petitioner's use of force was inadmissible because no expert had testified on the matter.  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that the prosecution's demonstration of the force Petitioner used to beat Allison was not improper, especially in light of the need to respond to Petitioner's own demonstration, and that trial counsel was reasonable in failing to lodge a fruitless objection thereto.  *See Nixon*, 405 F.3d at 328.  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

F.  Calling Petitioner a Liar

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor repeatedly calling Petitioner a liar.  *See* Pet'r's Am. Br. 25-28.  Petitioner claims that he did not lie, that it was improper for the prosecution to call him a liar, and that these statements prejudiced

Petitioner's case.  *See id.*  Petitioner also alleges that defense counsel's failure to rebut or object to the prosecution's statements amounted to ineffective assistance of counsel and deprived Petitioner of a fair trial.  *See id.* at 28.

The Magistrate Judge found that Petitioner put his credibility into issue by testifying at trial and that Petitioner's testimony repeatedly contradicted the evidence.  *See* FCR 26.  Specifically, Petitioner denied signing written *Miranda* warnings and denied portions of his written statement, including that he hit Allison with a closed first.  *See id.*  Given these facts, the Magistrate Judge found that the prosecution made a reasonable deduction from the evidence by calling Petitioner a liar and that trial counsel was not ineffective for failing to object.  *See id.*

Petitioner objects to the Magistrate Judge's findings on the grounds that it is unreasonable and unfair to conclude that Petitioner "is automatically a liar if the State presents evidence (even false evidence) or theories that [conflict] with Petitioner's [evidence]."  Pet'r's Objections 25.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that trial counsel acted competently in failing to object to the prosecution calling Petitioner a liar, given that this inference was supported by the evidence.  *See United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir. 1992) (finding no error in prosecution calling defendant a liar because "a  prosecutor may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as those inferences are grounded upon the evidence").  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

## IX.  DEFENSE COUNSEL'S JURY ARGUMENT

Petitioner alleges that trial counsel's argument to the jury was ineffective for numerous reasons. The Magistrate Judge divided these claims into three categories, each of which is discussed in turn below.

A.  Claims that Are "A Matter of Degrees"

Petitioner first makes claims that the Magistrate Judge held essentially come down to a matter of degrees. *See* FCR 27-30. These claims include:

> failure to humanize Petitioner and argue what type of person he "really was," failure to point out that Petitioner called 9-1-1 and did not abandon his daughter, failure to argue that Petitioner tried to save her life by performing CPR for up to twenty minutes, failure to argue that Petitioner did not flee the scene and was cooperative with police, failure to properly argue the inadmissibility of written statements, and calling the written statements "confessions."

*See id.* at 28. The Magistrate Judge found that trial counsel did not ignore these issues at trial but was aware of them and pursued them. *See id.* at 28, 30. The Magistrate Judge noted that trial counsel repeatedly elicited testimony on direct and cross about Petitioner's positive relationship with Allison, Petitioner's 9-1-1 call and resuscitation efforts towards Allison, and Petitioner's severe reaction to Allison's injuries and death. *See id.* at 28-29. Furthermore, the Magistrate Judge noted that trial counsel undertook significant efforts at trial to demonstrate that Petitioner's written statements were unreliable, while trial counsel only used the word "confessions" when directing the jury to the "confessions or statements" language in the jury charge. *See id.* at 29-30. Given these facts, the Magistrate Judge found that the state court was not unreasonable in denying relief under *Strickland*.

Petitioner objects to the Magistrate Judge's findings on the grounds that Petitioner's claims are not merely a matter of degrees. *See* Pet'r's Objections 25. Rather, Petitioner alleges that counsel

simply failed to "present a factual, coherent closing argument." *Id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*. Though Petitioner argues that the issues set out above were totally ignored at trial, *see id.*, it is clear that defense counsel at least dealt with each issue in his representation of Petitioner, *see* FCR 28-30. As such, whether trial counsel was ineffective for not developing these matters even further is a question of "degrees." *Skinner v. Quarterman*, 576 F.3d 214, 220 (5th Cir. 2009). "Those questions are even less susceptible to judicial second-guessing." *Id.* The state court could have reasonably found that trial counsel acted competently in deciding to not further emphasize these matters in closing argument. *See United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006). Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

B. Claims Contradicted by the Evidence

Next, Petitioner alleges that counsel was ineffective for failing to emphasize claims that the Magistrate Judge found were contradicted by the evidence. *See* FCR 30-31. These claims include that Allison was given lethal doses of medicine by EMTs at the scene, as well as the fact that Allison had injuries in her autopsy photos–specifically, scratches on her neck–that nobody testified to seeing on Allison at Petitioner's home. *See* Pet'r's Am. Br. 32-34.

The Magistrate Judge found that the evidence contradicted these claims. *See* FCR 30-31. As to the medicine administered by EMTs, the Magistrate Judge noted that the paramedics testified on cross-examination that while Allison was given more than a standard pediatric dose, this was allowable under the circumstances and, in any case, an overdose would not have caused cardiac arrest. *See id.* at 30. Furthermore, the medical examiner testified that Allison's death was not

caused by medical treatment or CPR.  *Id.*  As to Allison's injuries, the Magistrate Judge noted that a paramedic on the scene testified to observing scratches on Allison, along with other injuries.  *See id.*  Given these facts, the Magistrate Judge found that any argument by trial counsel that Allison had injuries not witnessed at the scene or received an overdose from paramedics would have been improper as outside the evidence.  *See id.*  Furthermore, the Magistrate Judge found that failure to make an argument that contradicts the evidence does not entitle Petitioner to relief because Petitioner cannot show prejudice.  *See id.*  As such, the Magistrate Judge found that the state court was not unreasonable for denying relief under *Strickland*.  *See id.* at 31.

Petitioner objects to the Magistrate Judge's findings on the grounds that they are erroneous and unreasonable.  *See* Pet'r's Objections 26-27.  Petitioner alleges that paramedic Gathright testified only as to scratches on Allison's knee, not the neck.  *See id.*  Petitioner also alleges that the EMTs could not testify as to the correct dosages to give Allison because they did not look them up.  *See id.*  Finally, Petitioner alleges that the medical examiner lacked the information about Allison's medical treatment so that she could not reliably or reasonably testify as to whether Allison's injuries were caused by medical treatment.  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that the evidence contradicted Petitioner's claims that Allison received an overdose from EMTs and suffered injuries after leaving Petitioner's custody, such that trial counsel acted competently in deciding not to raise these claims at trial.  *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990).  In addition, the state court could have reasonably found that Petitioner suffered no prejudice from counsel's failure to make arguments contradicted by the evidence.  *See id.*  Petitioner has failed to meet his burden

of proof under *Strickland* and the AEDPA.

   C.   Disagreement with Counsel's Strategy

   Finally, Petitioner makes a claim amounting to disagreement with trial counsel's strategy. *See* FCR 31-34.   Petitioner alleges that trial counsel was ineffective for conceding the issue of causation when he admitted that Petitioner "went too far in the discipline of his child."   *See* Pet'r's Am. Br. 28, 36.   Petitioner argues that by conceding Petitioner was guilty of criminally negligent homicide, a lesser-included offense, trial counsel effectively entered an unauthorized guilty plea. *See id.* at 37.   Petitioner further argues that his defense at trial was that he did not cause the injuries that caused Allison's death, such that trial counsel's admission of causation was an abdication of his role as advocate and undermined Petitioner's case. *See id.* at 38.

   The Magistrate Judge found that Petitioner erred in characterizing trial counsel's concession as an unauthorized guilty plea and that this decision by trial counsel was governed only by *Strickland*.   *See* FCR 31-32.   In evaluating whether trial counsel's concession was objectively unreasonable under *Strickland*, the Magistrate Judge noted the overwhelming evidence indicating that Petitioner caused Allison's blunt force injuries, including that Allison was alone with Petitioner the day she died, Petitioner admitted in two written statements to beating and whipping Allison with a plastic pipe, and Petitioner's trial testimony that he beat Allison "all the way around" for failing to answer Petitioner's questions. *See id.* at 33.   The Magistrate Judge stated that the record does not indicate that anyone but Petitioner caused Allison's injuries, and Petitioner does not contend otherwise. *See id.*   The Magistrate Judge also noted that trial counsel was successful in excluding evidence that Allison had suffered prior abuse from Petitioner. *See id.*   Given these facts, the Magistrate Judge found that it was reasonable trial strategy for trial counsel to admit causation but

36

challenge the mental state required for capital murder by arguing that Petitioner intended only to discipline Allison, not to kill or seriously harm her.  *See id.*  As such, the Magistrate Judge found that the state court was not unreasonable in denying relief under *Strickland*.  *See id.* at 34.

Petitioner objects that the Magistrate Judge's findings are unreasonable.  *See* Pet'r's Objections 27-28.  Petitioner alleges that he always contended Allison's injuries were caused by other sources, namely a fall in the shower and improper medical treatment.  *See id.*  Petitioner maintains that he only swatted Allison with a plastic tube and the back of his hand and argues that trial counsel was ineffective for failing to show that the prosecution's evidence to the contrary was false.  *See id.*  Petitioner also argues there is no evidence that Petitioner abused Allison prior to the day she died.  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  The state court could have reasonably found that trial counsel, faced with overwhelming evidence that Petitioner caused Allison's injuries, reasonably conceded the issue of causation and focused instead on Petitioner's mental state.  *See Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002) (finding no ineffective representation where overwhelming evidence established that defendant committed the acts charged, defense counsel conceded as much, but counsel continued to argue that defendant did not act intentionally).  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

## X.  THE ETMS 9-1-1 TAPE

Petitioner makes two claims regarding the recording of the emergency call Petitioner placed to East Texas Medical Services ("ETMS") on the day that Allison died.  *See* Pet'r's Am. Br. 43-50. First, Petitioner alleges that trial counsel was ineffective for failing to investigate and obtain a

complete tape of Petitioner's call to ETMS for use at trial.  *See id.*  Second, Petitioner alleges that

the prosecution's failure to furnish the transcript of the ETMS call to Petitioner violated *Brady v.*

*Maryland.  See id.*

A.  Counsel's Performance

Petitioner alleges that trial counsel was ineffective for failing to investigate and obtain the

full tape of Petitioner's call to ETMS.  *See id.* at 43-45.  Petitioner argues that the full tape was

material impeachment evidence which trial counsel could have obtained with an independent

investigation.  *See id.* at 44.  In particular, Petitioner argues that trial counsel should have asked for

a continuance when prosecution witness Brenda Zepeda revealed that the Sheriff's Office once had

a copy of the tape but lost it.  *See id.*  Petitioner further alleges that not having this tape prejudiced

his case because it tended to disprove Williams's testimony that Petitioner faked CPR on Allison

and, by contrast, showed that Petitioner was actually trying to save Allison's life.  *See id.* at 44-45.

The Magistrate Judge found that counsel was not deficient in failing to investigate and obtain

the full 9-1-1 tape.  *See* FCR 36-37.  Specifically, the Magistrate Judge noted that trial counsel

moved for the prosecution to preserve and produce the complete 9-1-1 tape before trial and asked

about its existence at a pretrial hearing.  *See id.*  In addition, the Magistrate Judge found that Zepeda

testified  not that the tape existed, as Petitioner claims, but that the tape did not exist and that Zepeda

was working to have the recording recovered.  *See id.* at 37.

The Magistrate Judge next found that any error by trial counsel in failing to obtain the

complete 9-1-1 tape for trial was not prejudicial to Petitioner.  *See id.* at 37-40.  The Magistrate

Judge noted that while resuscitation efforts may be interpreted as inconsistent with an intent to

kill–as Petitioner emphasizes–such efforts can also be indicative of a desire to lessen the

consequences of an act done with intent to kill or with knowledge that it was reasonably certain to cause death. *See id.* at 38. The Magistrate Judge also found that, even without the complete 9-1-1 tape, trial counsel successfully impeached Williams's testimony about Petitioner faking CPR. *See id.*; *see also supra* Part VII.A. Finally, the Magistrate Judge found that portions of the 9-1-1 tape were harmful to Petitioner's case and, in any case, the tape did not explain the injuries that Allison suffered before Petitioner placed the call. *See* FCR 38-39. The Magistrate Judge found that, to the extent Petitioner complained that the complete tape would have elucidated his mental state, the abbreviated tape played at trial served this same function. *See id.* at 39. Given the above facts, the Magistrate Judge found that the state court's denial of relief under *Strickland* was not unreasonable. *See id.*

In his objections, Petitioner reasserts his original argument that trial counsel was ineffective for failing to conduct an independent investigation and obtain a complete copy of the 9-1-1 tape for trial. *See* Pet'r's Objections 28. Petitioner again alleges that trial counsel should have attempted to obtain the tape and present it at trial once he learned of its location from Zepeda. *See id.* Petitioner also objects to the Magistrate Judge's findings that trial counsel impeached Williams, that resuscitation efforts are not inconsistent with the mental state for murder, and that portions of the 9-1-1 tape were hurtful to his case. *See id.* at 29. Petitioner also objects that the complete 9-1-1 tape contained information not in the abbreviated version of the tape presented at trial. *See id.* at 30.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*. The state court could have reasonably found that trial counsel acted competently in attempting to obtain a complete copy of the 9-1-1 call made by Petitioner,

given that trial counsel requested the tape but was informed it did not exist.  *See Brogdon v. Blackburn*, 790 F.2d 1164, 1169 (5th Cir. 1986) (finding defense counsel could not be faulted for failing to obtain evidence where counsel requested the evidence, the prosecution would have been bound to disclose it, but the prosecution stated there was no evidence to disclose).  Furthermore, it is not unreasonable to conclude that Petitioner suffered no prejudice from having access to only an abridged version of the 9-1-1 tape at trial, since there was overwhelming evidence to show that Petitioner caused Allison's injuries and both 9-1-1 tapes demonstrated that Petitioner engaged in resuscitation efforts.  *See United States v. Miller*, 520 F.3d 504, 515 (5th Cir. 2008) (finding no materiality under *Brady* when overwhelming evidence established defendant's guilt and would not have been undermined by the missing evidence); *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996) (finding no prejudice under *Brady* when the absent evidence is merely cumulative); *see also Felder v. Johnson*, 180 F.3d 206, 214 (5th Cir. 1999) ("[T]he standard for prejudice under *Strickland* is identical to the standard for materiality under *Brady*.") (internal quotation marks omitted).  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

    B.  <u>Prosecutor's Duty to Disclose</u>

      Petitioner alleges that the prosecution violated his rights under *Brady v. Maryland* when it failed to disclose the complete recording of Petitioner's 9-1-1 call.  *See* Pet'r's Am. Br. 45-50. Petitioner alleges that Zepeda's testimony at trial revealed that the Sheriff's Office had the complete tape at one time but lost it.  *See id.*  Petitioner argues that because the Sheriff Office's knowledge and possession of the tape is attributed to the prosecution, the prosecution had a duty to disclose the recording. *See id.* at 45-46.  Petitioner alleges that the 9-1-1 tape was favorable to his case and material under *Brady*, citing the same facts he relied upon in arguing that trial counsel's failure to

obtain the tape was prejudicial to his case under *Strickland*.  *See* Pet'r's Am. Br. 46-50; *see also supra* Part X.A.

The Magistrate Judge found that, as to Zepeda and the Sheriff's Office, the prosecution had no duty to disclose the 9-1-1 tape because Zepeda did not know whether the tape existed at the time of trial.  *See* FCR 37.  The Magistrate Judge noted that ETMS apparently had its own copy of the 9-1-1 tape, separate and apart from the Sheriff's Office.  *See id.*  As to ETMS, the Magistrate Judge found that the record was not sufficiently developed to determine whether ETMS should be treated as part of the prosecution team for *Brady* purposes.  *See id.*  However, applying the same rationale used to find no prejudice as to Petitioner's ineffective assistance of counsel claim, *see supra* Part X.A, the Magistrate Judge found that no *Brady* violation occurred because the 9-1-1 tape was not material to Petitioner's case.  *See* FCR 37-40.  As such, even if ETMS is treated as part of the prosecution and was in possession of the full 9-1-1- tape, the Magistrate Judge found that the prosecution did not violate *Brady* by failing to produce it.  *See id.* at 37.  The Magistrate Judge also found that portions of the 9-1-1 tape were not favorable to Petitioner.  *See  supra* Part X.A.  Given the above, the Magistrate Judge found that the state court was not unreasonable in denying relief under *Brady* and the AEDPA.  *See* FCR 39.

Petitioner objects to the Magistrate Judge's findings on the grounds that it was unreasonable to conclude that ETMS or its EMTs were not part of the prosecution team, given that three EMTs testified as prosecution witnesses at trial.  Pet'r's Objections 29.  Petitioner also objects that the Magistrate Judge ignores how favorable the 9-1-1 evidence would have been to Petitioner's case.  *See id.*  As Petitioner alleges, the 9-1-1 tape showed that Petitioner did not want to end Allison's life.  *See id.*

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Brady*.  The state court could have reasonably found that the prosecution had no duty to disclose the complete 9-1-1 tape because it was not known to exist.  *See United States v. Edwards*, 442 F.3d 258, 266 (5th Cir. 2006).  In addition, it was not unreasonable to conclude that no *Brady* violation occurred because the complete 9-1-1 tape was not material to Petitioner's case.  Specifically, given the overwhelming evidence that Petitioner caused Allison's injuries and the evidence that Petitioner subsequently engaged in resuscitation efforts, it would be reasonable to conclude that the complete 9-1-1 tape would not have undermined the weight of the evidence and would have been merely cumulative.  *See Miller*, 520 F.3d at 515 (finding no materiality where there was a "substantial body of evidence establishing [defendant's] guilt that [was] left unscathed by the suppressed evidence"); *see also Spence*, 80 F.3d at 995 ("[W]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs.").  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

## XI.  THE TOTALITY OF THE REPRESENTATION AND CUMULATION OF ALLEGED ERRORS

Petitioner alleges that, considering the totality of the representation and the cumulation of errors discussed above, trial counsel was ineffective.  *See* Pet'r's Am. Br. 12.  The Magistrate Judge discussed the wide range of acts performed by trial counsel on Petitioner's behalf, including but not limited to the filing of numerous motions, obtaining an expert investigator, and interviewing the medical examiner who performed the autopsy on Allison.  *See* FCR 40.  The Magistrate Judge also noted that trial counsel participated in pretrial hearings and was successful in suppressing or redacting harmful evidence, including a plastic pipe, hairs, and Petitioner's statement to a paramedic

42

that he "whipped [Allison] with a stick."  *See id.* at 40-41.  Based on these acts, and numerous others, the Magistrate Judge found that trial counsel's representation exceeded constitutional minimums and that the state court was not unreasonable in denying relief under *Strickland*.  *See id.* at 41.

In his objections, Petitioner reasserts his argument that trial counsel's failures, when considered individually and as a whole, served to deny Petitioner a fair trial.  *See* Pet'r's Objections 30.

Based on the foregoing, the Court finds that the state court was not unreasonable in denying Petitioner relief under *Strickland*.  As discussed above, the state court could have reasonably found that trial counsel acted competently in making each of the decisions complained of by Petitioner.  *See supra* Parts V-IX.  As such, the state court could have reasonably found that, when considered as a whole, the representation provided by trial counsel was also not ineffective.  *See Hall*, 455 F.3d at 508 ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.").  Petitioner has failed to meet his burden of proof under *Strickland* and the AEDPA.

## XII.  CONCLUSION

Based on the foregoing, the Court finds that the Findings, Conclusions, and Recommendation of the Magistrate Judge should be and are hereby **ACCEPTED** as the findings and conclusions of this Court.  By separate judgment, the Court formally dismisses this action.

**SO ORDERED** on this **2nd day** of **September, 2011**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

43